IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TONY M. RUIZ                                                                                                           PLAINTIFF
ADC #157474

v.                                              3:23-cv-00160-JM-JJV

ANTHONY VRENDENBURG,
Corporal, North Central Unit, ADC                                                                   DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.      INTRODUCTION**

Tony M. Ruiz ("Plaintiff") is a prisoner in the Varner Super Max Unit of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, alleging that while he was in the North Central Unit on January 27, 2023, Defendant Corporal Anthony Vrendenburg violated his Eighth Amendment rights and committed several state torts when he falsely told other inmates Plaintiff was a child molester. (Doc. 2.) All other claims were dismissed without prejudice during screening mandated by 28 U.S.C. § 1915A. (Doc. 11.)

In November 2023, Defendant Vrendenburg filed a Motion for Summary Judgment and a

1

Reply arguing those claims should be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies. (Docs. 25-27, 35.) In particular, Defendant argued Plaintiff's appeal at the final stage of the ADC's exhaustion process was improper because Plaintiff included a photocopy, instead of his original, Unit Level Grievance Form. (*Id*.) Plaintiff filed two Responses. (Docs. 31-34, 36-37.)

After reviewing those pleadings, I concluded there were genuine issues of material fact as to: (1) whether Plaintiff's appeal to the ADC Deputy Director included the original or a photocopy of his Unit Level Grievance Form; (2) why Plaintiff may have included a photocopy instead of the original version; and (3) why the ADC Deputy Director needed the original, handwritten version to rule on the merits of Plaintiff's appeal. (Doc. 38.) Accordingly, on March 6, 2024, I held an Evidentiary Hearing (Doc. 42) to address those issues and any other matters necessary for entering a recommendation on the pending Motion for Summary Judgment. *See Boyd v. Rechcigl*, 790 Fed. Appx. 53, 54 (2020) (the court, rather than a jury, may resolve factual issues regarding the exhaustion of administrative remedies); *Lee v. Willey*, 789 F.3d 673, 677(6th Cir. 2015)(same).

After carefully considering the pleadings and evidence presented during the Evidentiary Hearing, I recommend Defendant's Motion for Summary Judgment be GRANTED, Plaintiff's remaining claims against Defendant Vrendenburg be DISMISSED without prejudice, and this case be CLOSED.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of

demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

### III. PLEADINGS

#### A. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218.

Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

### B.      ADC's Grievance Policy

The parties agree the ADC policy in effect at the time of the alleged constitutional violation was Administrative Directive 19-34, which establishes a three-step procedure. (Docs. 25-1, 25-2.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (Doc. 25-2 § IV(E)(2).) The form has three carbon copies. The prisoner keeps two carbon copies, and the problems solver takes the original plus one carbon copy. (*Id*. § IV(E)(3).) The problem solver must respond to the informal resolution within three working days. (*Id*. § IV(E)(4) and (7).) And when doing so, the problem solver gives the original copy back to the prisoner. (*Id*. at § IV(E)(12).)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance within three working days by completing a section on the informal resolution form. (*Id.* § IV(E)(11) and (F)(1).) This is when the document is assigned a formal grievance number in a box in the upper right corner of the form marked "FOR OFFICIAL USE ONLY." (*Id.* § IV(F)(3); Doc. 25-4 at 4.) The Warden must provide a written response within twenty working days. (*Id*. § IV(F)(5) and (7).)

Third, an inmate who is dissatisfied with the grievance response, or who does not timely receive a response, must appeal within five working days to the appropriate ADC Deputy Director. (*Id*. § IV(F)(9) and (G)(6).) As pointed out by Defendant Vrendenburg, Admin. Dir. 19-34 §

4

IV(G)(2) says to "appeal the inmate must include the original (no photocopies) Unit Level Grievance Form (Attachment I,) which describes the matter originally grieved" and the Warden's decision.  (Doc. 25-2 at 12.)   The inmate must "state the reason for the appeal," and he or she cannot "list additional issues, requests, or names which were not part of the original grievance, as those will not be addressed."   (*Id*.)   The ADC Deputy Director's decision at this stage ends the grievance process.   (*Id*. § IV(G)(6).)

C.   **Plaintiff's Grievance**

The parties agree NC-23-43 is the only relevant grievance Plaintiff filed about the claims raised in this lawsuit but disagree whether it was properly exhausted.  (Docs. 27, 32.)   On January 27, 2022, Plaintiff filed an informal resolution saying that, while picking up the breakfast trays, Corporal Vrendenburg told an inmate porter Plaintiff had been convicted of a sexual offense and then allowed the porter to tell the inmates on the tier that he was a "cho-mo" or child molester. (Doc. 25-4 at 4.)   The problem solver denied the informal resolution because: "At no time has any officer given out any information to any inmate on you."   (*Id*.)

On February 5, 2023, Plaintiff filed grievance NC-23-43, on the same form, saying "this needs to be investigated cause they have placed me at risk of my safety."   (*Id*.)   On February 9, 2023, Defendant Vrendenburg signed and dated an Inmate Grievance Investigation Worksheet denying Plaintiff's allegations.  (*Id.* at 7.)   In response to the question of whether he told "the inmate porter any information regarding inmate Ruiz's charges," Defendant Vrendenburg wrote: "No. At no point did I give any information regarding I/M Ruiz's charges to the porter <u>or anyone else</u>."   (*Id*.) (emphasis added.)   And Corporal Vrendenburg denied hearing the inmate porter tell anyone Plaintiff was a child molester.   (*Id.*)

On February 10, 2023, the Warden denied the grievance because he did not find any

5

evidence to support Plaintiff's allegations. (*Id*. at 5). The following day, Plaintiff appealed for the following reasons:

> It wasn't the porter as I earlier stated but the officer that said those comments. I have proof of it by the porter himself telling me and his hand written statements, that officer yelled it out to the tier not the inmates. I was mistaken, just figured a reasonable officer wouldn't do something like that but he did.

(*Id*.) The parties disagree whether Plaintiff attached the original version or a photo copy of his Unit Level Grievance Form to his appeal. But they agree that on March 28, 2023, the ADC Deputy Director rejected the appeal on procedural grounds, without addressing the merits, because: (1) Plaintiff included a photocopy instead of the original Unit Level Grievance Form; and (2) the appeal raised "new or additional issues or complaints." (*Id*. at 6.)

## IV.    HEARING TESTIMONY

In his written Motion, Defendant Vrendenburg argued Plaintiff failed to properly exhaust his administrative remedies because he included a photocopy, instead of the original version, of the Unit Level Grievance Form with his appeal. (Docs. 25-27, 35.) However, during the hearing, Defendant moved to amend his Motion to include that Plaintiff's appeal was also improper because it included additional issues, requests, or names which were not part of the original grievance. Plaintiff did not object. Thus, I will consider both arguments.

### A.    Photocopy or Original Unit Level Grievance Form

The hearing began with the testimony of Ms. April Gibson, who is the Assistant Inmate Grievance Coordinator. After verifying that NC-23-43 was the only relevant grievance, Ms. Gibson explained that in preparation for the hearing she had reviewed NC-23-43, which was scanned, in color, into the ADC's computerized database called "EOMIS." In response to my questions, Ms. Gibson testified the Unit Level Grievance Form Plaintiff filed with his appeal was in black and white. In contrast, Ms. Gibson said the original version of that form that was scanned

6

into EOMIS contained colored ink in the problem solver's response and the box labeled "FOR OFFICE USE ONLY.[1]  And she said there was residue on the top of the page of the form where the carbon copies had been separated.   This caused Ms. Gibson to reach the logical conclusion that Plaintiff had attached a photocopy, instead of the original version, of the Unit Level Grievance Form to his appeal in violation of Admin. Dir. 19-34 § IV(G)(2).[2]

In contrast, Plaintiff testified he sent the original version, and not a photocopy, of his Unit Level Grievance Form to the Warden and the ADC Deputy Director.   Plaintiff agreed the section labeled FOR OFFICE USE ONLY and the problem solver's response were written in colored ink. Importantly, Plaintiff said the ADC Deputy Director returned the original version of the Unit Level Grievance Form with his final decision rejecting the appeal on procedural grounds.   And Plaintiff claimed he attached the original version of the Unit Level Grievance Form to the Complaint he filed in this lawsuit.   (Doc. 2 at 19.)   Unfortunately, I was unable to verify this because the documents scanned into the record are in black and white.   And, pursuant to Court policy, the

---

[1] In that section, the officer gives the grievance an official number, writes the date the grievance is received, and assigns a grievance code regarding the nature of the complaint.   (Doc. 25-4.)

[2] During cross-examination, Plaintiff asked Ms. Gibson how he could have obtained a photocopy of the Unit Level Grievance Form.   Ms. Gibson explained that an inmate must submit a photocopy request form to the Unit library and authorize a withdrawal from his or her inmate account to pay for the copies.   Plaintiff then asked Ms. Gibson where were the records showing he completed those steps to have his Unit Level Grievance Form photocopied.   Ms. Gibson testified she had no personal knowledge of whether such records existed because she did not work at the Unit.   And Plaintiff did not offer any affirmative evidence, such as ADC financial records, demonstrating he did not incur any photocopying charges during the relevant time period, which is something he could have obtained during discovery. Later, during the cross examination of Plaintiff, defense counsel pointed out that, pursuant to Admin. Dir. 19-34 § IV(C)(3), Plaintiff could have received one free copy of his grievance from the facility grievance staff.   (Doc. 25-2 at 5.)   But as pointed out by Plaintiff, that provision applies only "upon presenting a completed Section 1983 lawsuit." (*Id*.)   Thus, Plaintiff could not have obtained a free copy of his Unit Level Grievance Form until <u>after</u> he filed this lawsuit, which was long after his deadline for filing his grievance appeal expired. Thus, I find this footnoted testimony did not shed any light on the issue of whether Plaintiff filed a photocopy or the original version of the Unit Level Grievance Form.

7

Clerk's office destroyed the original documents thirty days after they were received. Thus, it is impossible to tell from the Court's records whether the Complaint included the original Unit Level Grievance Form, with colored ink, or a photocopy thereof.

Nevertheless, I find Plaintiff violated the ADC's grievance rules by filing a photocopy of his Unit Level Grievance Form with his appeal for the following reasons. First, I find Ms. Gibson to be a very credible witness who, unlike Plaintiff, is not a party to this lawsuit. Ms. Gibson unequivocally and with particularity testified that Plaintiff filed a photocopy, rather than the original version, of the Unit Level Grievance Form which included colored ink and residue from removed carbon copies. And her testimony is consistent with the undisputed fact that the ADC Deputy Director's decision said a photocopy of the form, rather than an original version, was included with the appeal.

In contrast, Plaintiff's testimony that the ADC Deputy Director returned the original copy of the Unit Level Grievance Form with his decision saying the appeal was rejected, in part, for not containing an original copy of that document is internally inconsistent and not credible. Further, Plaintiff, who admitted he is well familiar with the grievance process and filing § 1983 lawsuits, did not retain the original version of his Unit Level Grievance Form which, for obvious reasons, had become a crucial piece of evidence he should have kept in his possession. Instead, he allegedly sent the original version to the Court. And I find it significant the Complaint makes no mention of Plaintiff's appeal being wrongfully rejected for including a photocopy instead of the original version of the Unit Level Grievance Form. Instead, the Complaint provides the facts for the underlying failure to protect claim and argues the appeal was wrongfully rejected because Plaintiff changed his argument on appeal.

For these reasons, I conclude it is more likely than not that Plaintiff violated Admin. Dir.

19-34 § VI(G)(2) by including a photocopy, instead of the original version, of his Unit Level Grievance Form with his appeal to the ADC Deputy Director. It is well settled that to satisfy the PLRA, a prisoner must properly comply with the incarcerating facility's grievance procedure. *See Woodford*, 548 U.S. at 90 (administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"); *Muhammad v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion"). Based on the evidence before me, I find Plaintiff did not do so. And Plaintiff has not made any argument or presented any evidence suggesting administrative remedies were unavailable to him to properly exhaust his claim. *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust only "available" administrative remedies); *Ross v. Blake*, 578 U.S. 632, 642 (2016) (broadly defining "available" as "capable of use" to obtain "some relief for the action complained of"). Thus, I conclude Defendant Vrendenburg is entitled to summary judgment because Plaintiff failed to properly exhaust his available administrative remedies. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

      **B.    New Issue on Appeal**

In an abundance of caution, I also address Defendant's argument that the appeal was properly rejected on procedural grounds because Plaintiff raised a new issue. Specifically, Defendant says Plaintiff initially said in his grievance that the porter was the wrongdoer, but on appeal he claimed, for the first time, that Defendant Vrendenburg was the culprit. But I disagree with Defendant's characterization of the undisputed evidence here.

In the informal resolution and grievance Plaintiff said Defendant Vrendenburg violated his rights by wrongfully telling the porter he was a sex offender and then allowing the porter to spread that information to the inmates on the tier. During the investigation, Defendant Vrendenburg said he did not give any information about Plaintiff's convictions "to the porter <u>or anyone else</u>." (Doc. 25-4) (emphasis added.) As pointed out by Plaintiff during the hearing, in the appeal Plaintiff clarified that Defendant Vrendenburg told several inmates, and not just the porter, that he was a child molester.[3] So the issue initially grieved and raised on appeal is the same, *i.e.,* that Defendant Vrendenburg put Plaintiff in danger by telling one or more inmates that he was a child molester. Plaintiff's appeal merely clarified the number of inmates who heard that information directly from Defendant Vrendenburg. It did not raise an "additional issue, request, or name" absent from the original grievance. And, importantly, ADC officials already had enough information in their file to address that clarification because Defendant Vrendenburg said in his investigation response that he did not give information about Plaintiff's conviction to the porter or "anyone else." *See Jones,* 549 U.S. at 219 (explaining that one of the purposes of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit"). Thus, I find ADC officials thwarted Plaintiff from exhausting his available administrative remedies when they erroneously rejected his appeal as raising a new issue. *See Ross*, 578 U.S. at 643-44 (administrative remedies are "unavailable" when: (1) the grievance procedure "operates a dead end;" (2) the procedure is "so opaque that it becomes . . . incapable of use;" or (2) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").

---

[3] Plaintiff explained that he did not learn that information until the porter put a note in his laundry sometime after he filed his grievance. (Docs. 2, 5, 9.)

10

V.     **MERITS OF THE FAILURE TO PROTECT CLAIM**

Finally, the Eighth Circuit has held that a trial court cannot proceed to the merits of any unexhausted claim. *See Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378 (8th Cir. Aug. 19, 2010); *Barbee v. CMS,* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010). I, however, write further in the event that the District Judge or the Eighth Circuit Court of Appeals disagrees with my exhaustion findings. If that occurs, I recommend this case be dismissed on the merits for the following reason.

During the hearing, I asked Plaintiff if he was harmed at the North Central Unit as a result of the inmates there being incorrectly told that he was a child molester. Plaintiff said he was not. Plaintiff also explained that, shortly after the January 2023 incident, he was transferred to the Varner Super Max where he is no longer around the inmates who were falsely motivated to harm him. The only relief Plaintiff seeks in his lawsuit is compensatory and punitive damages. (Doc. 2.) Because Plaintiff admits he was not harmed as a result of Defendant's allegedly unconstitutional conduct, and he no longer faces any substantial risk of harm now that he is at a different Unit, I conclude his claims fail as a matter of law. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"); *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) ("Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation"); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (no constitutional violation when a prisoner failed to demonstrate he was actually harmed by the conditions of his confinement and was no longer living in them).

## VI. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendant's Motion for Summary Judgment (Doc. 25) be GRANTED, Plaintiff's claim against Defendant Vrendenburg be DISMISSED without prejudice because he failed to properly exhaust his available administrative remedies, and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 13th day of March 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE